[No. B166686. Second Dist., Div. Eight. Oct. 21, 2004.]

MARY GOLIGER, Plaintiff and Respondent, v.
AMS PROPERTIES, INC., Defendant and Appellant.

### Counsel

Beach, Procter, McCarthy & Slaughter, Thomas E. Beach, Sean D. Cowdrey and Rebecca B. Lowell for Defendant and Appellant.

Maher, Guiley & Maher, Steven R. Maher, John Ksajikian; Esner & Chang, Andrew N. Chang and Stuart B. Esner for Plaintiff and Respondent.

### Opinion

**RUBIN, J.**—AMS Properties, Inc., appeals from the trial court's denial of its motion to compel arbitration. We affirm.

### FACTS AND PROCEDURAL HISTORY

Seventy-eight-year-old Mary Goliger (Goliger or mother) had hip surgery in November 2000. During her recuperation, she moved to Tarzana Rehabilitation Center, a 24-hour residential health care facility owned by appellant AMS Properties, Inc. (AMS or the center). Goliger's daughter, Ruth Binshtock, signed the center's admission form as a "responsible party" for her mother. According to the form, a " 'Responsible Party' means Ruth Binshtock, [Goliger's] sponsoring agency, other payor or payor representative, next of kin, Agent, Legal Representative, Family Member or any person other than [Goliger], if any, who has voluntarily agreed to become, and is,

personally responsible or liable for, payment of any or all of the charges incurred by [Goliger] while in the Facility." The form also provided a place for Binshtock to sign as her mother's "agent," which she left blank. In addition, the admissions packet contained two arbitration agreements, one covering medical malpractice and the second covering other torts, breach of contract, and claims brought by others on Goliger's behalf. Both arbitration forms had three signature lines: "resident" (for Goliger, left unsigned); "responsible party"; and, "agent." Binshtock signed each agreement as a "responsible party" for her mother, leaving the "agent" signature line blank.

Goliger allegedly received negligent care at the center and died in May 2001. Binshtock sued AMS as her mother's successor in interest for her mother's personal injuries. Binshtock also sued AMS individually for her mother's wrongful death. AMS moved to compel arbitration, which the court denied. It found AMS failed to show Goliger had authorized Binshtock to agree to arbitrate Goliger's claims or that Binshtock had agreed to arbitrate her own personal claims. This appeal followed.

## DISCUSSION

■ AMS contends Binshtock agreed to arbitrate her mother's malpractice claims and her own wrongful death claim. AMS's contention, which carries the burden of proving the existence of such agreements to arbitrate (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 [120 Cal.Rptr.2d 892] (*Pagarigan*)), fails both times.

We begin with mother's claims. AMS argues Binshtock was her mother's agent and was therefore authorized to waive her mother's right to a jury trial and bind her to arbitration. AMS additionally argues in the alternative that mother acted in a way that led AMS to reasonably believe Binshtock was mother's agent, also known as an ostensible agency. (Civ. Code, §§ 2299, 2300; *Pagarigan, supra,* 99 Cal.App.4th at pp. 301–302.) In support of both contentions, AMS points to times where mother let Binshtock act for her in medical matters. For example, mother instructed health care providers to communicate with her through Binshtock. Also, Binshtock scheduled mother's medical appointments and ordered her prescription refills. Finally, Binshtock signed the consent form for mother's hip surgery and helped develop and implement her care plan.

Binshtock's authority to act for her mother in protecting her health does not establish AMS's contention. First, the wording of the arbitration agreements themselves belies AMS's assertion. Each agreement contained three signature lines, two of which were for "agent" and for "responsible party." For both agreements, Binshtock signed as "responsible party," meaning she

accepted financial responsibility for her mother's nursing home bills. Tellingly, she did not sign as "agent," instead leaving the line blank.

Second, the health care examples AMS cites do not equate with being an agent empowered to waive the constitutional right of trial by jury. *Pagarigan, supra,* 99 Cal.App.4th 298, which the trial court cited, is on point. There, adult children signed an arbitration agreement for their mother to admit her to a nursing home. The court refused to enforce the arbitration agreement against the mother because the next-of-kin status which had empowered the children to make medical decisions for their mother, such as admitting her into the nursing home, did not confer the power to waive her right to a jury. (*Id.* at p. 302.)

AMS tries to distinguish *Pagarigan.* It notes that the mother in that case was comatose and therefore could not consent to her children making any decisions for her. Thus, it was reasonable, AMS argues, for the court to limit the children to those choices permitted them by statute regarding medical care, but to refuse to make them her agents for other purposes. Here, in contrast, mother was mentally alert and consented to Binshtock making health care decisions for her. Thus, there was no similar reason in AMS's view to narrowly construe the grant of such powers. AMS's argument does not, however, justify expanding Binshtock's powers beyond what the evidence shows mother permitted. The record shows mother allowed Binshtock to make medical decisions for her. As the *Pagarigan* court stated in words that are equally appropriate here, "[the nursing home d]efendants do not explain how the next of kin's authority to make medical treatment decisions for the patient . . . translates into authority to sign an arbitration agreement on the patient's behalf at the request of the nursing home." (*Pagarigan, supra,* 99 Cal.App.4th at p. 302.)

We now turn to arbitration of Binshtock's personal claim for her mother's wrongful death. Binshtock signed the arbitration forms in her capacity as her mother's "responsible party." Nothing on the arbitration form indicates she signed in her personal capacity. Binshtock's circumstances thus are similar to those of the corporate officer in *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990 [112 Cal.Rptr.2d 358]. There, a corporate officer signed an arbitration agreement for a corporation in his capacity as an officer. When he later sued on personal claims, the court held the arbitration agreement did not bind him because he had signed it only in his representative capacity.

■ *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140 [119 Cal.Rptr.2d 489], is instructive on the point. In *Buckner,* we held a parent could not bind his adult children to arbitration when he was not their agent. (*Id.* at pp. 142–143.) Broadly speaking, the decision stands for the proposition that an adult who

has no agency relationship with other adults cannot sign away the other adults' right to a jury. Applied here, *Buckner* means Binshtock could not have waived her siblings' right to jury trial (if such siblings existed—the record is silent whether they do). Putting AMS's argument and *Buckner* together, according to AMS Binshtock waived her right to jury trial by acting as her mother's "responsible party," yet following *Buckner*, absentee siblings who did not promise to pay their mother's nursing home bills would have greater rights, namely the continued right to jury trial. AMS's assertion creates an anomalous, and inequitable, result, which must fall before *Buckner*.

■ AMS tries to distinguish *Buckner*. AMS correctly notes that nothing in *Buckner* says an adult child cannot bind herself to arbitration. Here, however, Binshtock was not acting in her personal capacity when she signed the arbitration agreements, but instead in her representative capacity as her mother's responsible party. Hence, no waiver of Binshtock's personal right to a jury trial can be inferred. (See *Benasra v. Marciano, supra,* 92 Cal.App.4th at p. 990.)

## DISPOSITION

The order denying arbitration is affirmed. Respondent to recover her costs on appeal.

Cooper, P. J., and Boland, J., concurred.