[No. G036406. Fourth Dist., Div. Three. Mar. 1, 2007.]

JAMES E. HOGAN et al., Plaintiffs and Respondents, v.
COUNTRY VILLA HEALTH SERVICES et al., Defendants and Appellants.

COUNSEL

Morris·Polich & Purdy, Marc Katz, Richard H. Nakamura, Jr., and Maureen M. Home for. Defendants and Appellants.

Hooper, Lundy & Bookman, Mark E. Reagan and Felicia Y.Sze for California Association of Health Facilities as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of Timothy J. Swift and Timothy J. Swift for Plaintiffs and Respondents.

Balisok & Associates, Inc., and Russell S. Balisok for California Advocates for Nursing Home Reform, Inc., as Amicus Curiae on behalf of Plaintiffs and Respondents.

OPINION

**MOORE, J.**—The children of a decedent sued a nursing home that had provided services to their mother. The trial court denied the nursing home's motion to compel arbitration of the elder abuse cause of action. The nursing home contends that the trial court, in so doing, ignored the controlling precedent of *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253 [33 Cal.Rptr.3d 350] (*Garrison*). The nursing home is correct that *Garrison* is well reasoned and dictates the outcome of this case. The trial court should have granted the motion. The decedent had signed a Probate Code section 4701 health care power of attorney that authorized her daughter to make health care decisions for her, including the selection of health care providers. This authorization impliedly included the power to execute contracts of admission when having the decedent admitted to a long-term health care facility. Inasmuch as the decedent had not elected to restrict the powers of the daughter as her agent so as to exclude the power to enter into arbitration agreements, the daughter had the power to execute arbitration agreements when presented to her by the long-term health care facility as part of the package of admissions documents. We reverse and remand.

I

FACTS

In January 2001, Sarah Hogan (Sarah) executed a Probate Code section 4701 statutory advance health care directive form, i.e., a health care power of

attorney. (Prob. Code, §§ 4629, 4701.) In that document, she named her daughter, Barbara Hogan (Barbara), as her agent.[1] In May 2004, when Sarah was suffering from stage II Alzheimer's disease, Barbara had her admitted to Country Villa Plaza Healthcare Center, a skilled nursing care facility. At the time of admission, Barbara signed two arbitration agreements—one manifesting an agreement to arbitrate any medical malpractice claims and one manifesting an agreement to arbitrate any other type of claim against the facility. The second agreement specifically stated that any claim for alleged violations of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) was to be arbitrated. Each of the two arbitration agreements was optional and each contained a 30-day rescission right.

In July 2005, Barbara and her three brothers (collectively, the Hogans) filed a complaint for wrongful death, elder abuse and violation of patient rights, against Country Villa Health Services, Country Villa Plaza Healthcare Center and Marcia Jackson (collectively, Country Villa).[2] Country Villa thereafter filed a motion to compel arbitration of the second cause of action, for elder abuse. The trial court denied the motion, stating that the health care power of attorney did not authorize Barbara to enter into the arbitration agreements on her mother's behalf. Country Villa appeals.

## II

## DISCUSSION

A. *Health Care Power of Attorney*

Pursuant to the Probate Code section 4701 health care power of attorney in question, Sarah authorized Barbara to make health care decisions for her. The document contained the following language: "Unless the form you sign limits the authority of your agent, your agent may make all health care decisions for you. This form has a place for you to limit the authority of your agent. You need not limit the authority of your agent if you wish to rely on your agent for all health care decisions that may have to be made. If you choose not to limit the authority of your agent, your agent will have the right to: [¶] a) consent or refuse consent to any care, treatment, service or procedure to maintain, diagnose or otherwise affect a physical or mental condition[; and] [¶] b) select or discharge health care providers and institutions. . . ."

---

[1] "Hereafter, we refer to [Sarah and Barbara Hogan] by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2 [47 Cal.Rptr.3d 183].)

[2] In the complaint, the Hogans alleged that Country Villa Health Services owned and operated the nursing home and that Marcia Jackson was the administrator thereof.

Sarah did not impose any limitations on Barbara's authority to select or discharge health care providers and institutions. The only limitation of any kind that Sarah imposed had to do with the postdeath donation of organs, tissues or body parts.

The question is whether the provision permitting Barbara to select and discharge health care providers and institutions includes the authority to execute admissions forms, including arbitration agreements, on Sarah's behalf. Country Villa says, "yes," and the Hogans say, "no."

### B. *Health Care Decisions Law*

As indicated above, the provisions of the standard form health care power of attorney that Sarah signed are set forth in Probate Code section 4701, a part of the Health Care Decisions Law contained in division 4.7 of the Probate Code (§ 4600 et seq.). Probate Code section 4700 explains that the standard form "may, but need not, be used to create" a health care power of attorney. Section 4700 also provides that the other sections of the Health Care Decisions Law "govern the effect of" a health care power of attorney.

Some of the other statutory provisions of the Health Care Decisions Law that come into play include Probate Code section 4683, which generally permits an agent under a health care power of attorney to make "health care decisions " for the principal, and Probate Code section 4617, which specifies that the "[s]election and discharge of health care providers and institutions" is a " '[h]ealth care decision.' " Another of those statutory provisions is Probate Code section 4688, which provides that when the Health Care Decisions Law does not articulate a rule governing a particular question about an agent's powers under a health care power of attorney, the laws of agency shall apply to provide the rule. As we shall show, these Probate Code provisions, together with Civil Code provisions on general agency law, provide that an agent under a Probate Code section 4701 health care power of attorney, in selecting a long-term health care facility, has the power to execute applicable admissions forms, including arbitration agreements, unless that power is restricted by the principal. As we shall explain, this conclusion is supported by *Garrison, supra,* 132 Cal.App.4th 253, a case that is similar in material respects to the one before us.

### C. *Garrison*

In *Garrison, supra,* 132 Cal.App.4th 253, a daughter, who was designated as her mother's attorney-in-fact under a health care power of attorney, signed

her mother into a health care facility. (*Id.* at p. 256.) At the time the daughter did so, she signed two arbitration agreements, one pertaining to medical malpractice claims and one pertaining to all other claims against the facility. (*Id.* at pp. 256, 259–261.) Following the death of the mother, the daughter and certain other family members filed suit against the facility, collectively asserting causes of action for elder abuse, negligence, fraud, unlawful business practices and wrongful death. (*Id.* at pp. 256–257.) The facility moved to compel arbitration. (*Id.* at p. 262.) The trial court granted the motion and the appellate court agreed that the daughter had the authority to enter into the arbitration agreements on her mother's behalf. (*Id.* at pp. 262, 266.)

The health care power of attorney at issue in *Garrison, supra,* 132 Cal.App.4th 253 was not created via a standard form Probate Code section 4701 document, as was the one before us. However, the *Garrison* health care power of attorney provided that it was created under Probate Code section 4600 et seq., which, as stated previously, also applies to the health care power of attorney Sarah executed. (*Garrison, supra,* 132 Cal.App.4th at p. 258.) Moreover, the *Garrison* health care power of attorney also provided, as does the one Sarah signed, that the daughter was authorized to " 'make health care decisions' " for the mother. (*Ibid.*) Thus, the interpretation of the pertinent document provisions and the applicable Probate Code provisions is essentially the same under both *Garrison* and the case before us.

In undertaking its analysis, the *Garrison* court noted that " 'California law favors enforcement of arbitration agreements. [Citations.]' " (*Garrison, supra,* 132 Cal.App.4th at p. 263.) However, the court also made plain that " 'the right to compel arbitration [nonetheless] depends upon the existence of a valid agreement to arbitrate between the parties. [Citations.]' " (*Ibid.*) It then showed why a valid agreement to arbitrate was present.

The *Garrison* court opined that three provisions of the Health Care Decisions Law governed the outcome of the case. (*Garrison, supra,* 132 Cal.App.4th at p. 265.) It first cited Probate Code section 4683, which states in pertinent part: "(a) An agent designated in the power of attorney may make health care decisions for the principal to the same extent the principal could make health care decisions if the principal had the capacity to do so. [¶] (b) The agent may also make decisions that may be effective after the principal's death . . . ." (See 132 Cal.App.4th at p. 265.) Next, the court cited Probate Code section 4684, which provides in pertinent part: "An agent shall make a health care decision in accordance with the principal's individual health care instructions, if any, and other wishes to the extent known to the agent. . . ." (See 132 Cal.App.4th at p. 266.) Finally, the *Garrison* court cited

Probate Code section 4688, which states: "Where this division does not provide a rule governing agents under powers of attorney, the law of agency applies." (See 132 Cal.App.4th at p. 266.)

The *Garrison* court reasoned: "Under the combined effect of these three provisions of the Health Care Decisions Law, [the daughter] had the authority to enter into the two arbitration agreements on behalf of [her mother]. [The daughter] executed the arbitration agreements while making health care decisions on behalf of [her mother]. Whether to admit an aging parent to a particular care facility is a health care decision. The revocable arbitration agreements were executed as part of the health care decisionmaking process. . . . [The daughter] was granted the authority to choose a health care facility which: does not require arbitration; makes arbitration optional as to some possible disputes, as here, and includes a 30-day time period to cancel the agreements to arbitrate; or absolutely requires the use of arbitration to resolve disputes over care. In this case, [the daughter] was authorized to act as [her mother's] agent in making the decision to utilize a health care facility which included an optional revocable arbitration agreement. . . . Moreover, Probate Code section 4683, subdivision (b) allows the attorney in fact to 'make decisions after the principal's death' which would include how to resolve disputes with the health care provider." (*Garrison, supra,* 132 Cal.App.4th at p. 266.)

In further support of its analysis, the *Garrison* court noted the application of general agency laws to health care powers of attorney and the opinion of the California Supreme Court with respect to the authority of agents to bind principals in the medical care arena. (*Garrison, supra,* 132 Cal.App.4th at pp. 266–267.) As the *Garrison* court observed, "Probate Code section 4688 clarifies that if there are any matters not covered by the Health Care Decisions Law, the law of agency is controlling. Civil Code section 2319 states: 'An agent has authority: [¶] 1. To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency . . . .' The decision to enter into optional revocable arbitration agreements in connection with placement in a health care facility, as occurred here, is a 'proper and usual' exercise of an agent's powers." (*Id.* at p. 266.) The *Garrison* court further observed that the California Supreme Court, in *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178], had "concluded that 'an agent or fiduciary' who makes medical care decisions retains the power to enter into an arbitration agreement. [Citations.]" (*Garrison, supra,* 132 Cal.App.4th at p. 267.) With the opinion of the California Supreme Court in mind, the *Garrison* court concluded: "Probate Code section 4688 makes it clear that when the Health

Care Decisions Law fails to directly address an issue, the law of agency, which includes Civil Code section 2319 as interpreted in *Madden,* applies." (*Garrison, supra,* 132 Cal.App.4th at p. 267.) It then held that the mother's damage claims were subject to the arbitration agreements the daughter had executed. (*Ibid.*)

The Hogans contend that the analysis of *Garrison, supra,* 132 Cal.App.4th 253 is fundamentally flawed. They insist that the court erred in concluding that the "arbitration agreements were executed as part of the health care decisionmaking process." (*Id.* at p. 266.) We disagree. In addition to the reasons the *Garrison* court articulated in support of its conclusion, Country Villa and its amicus curiae provide another. As they point out, the statutes regulating contracts of admission to long-term health care facilities, including contracts for arbitration, also lend support to the *Garrison* court's conclusion.

■ Health and Safety Code section 1599.60 et seq. addresses the legal requirements of the contracts to be used on admission of an individual to a long-term health care facility. Section 1599.81 in particular addresses arbitration clauses used in contracts of admission and provides certain requirements for the form and content of the same.[3] The statutory framework thus sanctions the use, in contracts of admission, of arbitration clauses meeting those requirements. It necessarily follows that when a representative of a prospective long-term health care facility resident reviews and evaluates contracts of admission with an eye towards deciding whether to place the individual at the facility, that decisionmaking process may include the review and evaluation of arbitration agreements meeting the requirements of Health and Safety Code section 1599.81, if such agreements are presented by the facility. In other words, when an agent under a health care power of attorney is faced with selecting a long-term health care facility, as part of the health care decisionmaking process (Prob. Code, § 4617), he or she may well be asked to decide whether to sign an arbitration agreement as part of the

---

[3] Health and Safety Code section 1599.81 provides: "(a) All contracts of admission that contain an arbitration clause shall clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission to the facility. [¶] (b) All arbitration clauses shall be included on a form separate from the rest of the admission contract. This attachment shall contain space for the signature of any applicant who agrees to arbitration of disputes. [¶] (c) On the attachments, clauses referring to arbitration of medical malpractice claims, as provided for under Section 1295 of the Code of Civil Procedure, shall be clearly separated from other arbitration clauses, and separate signatures shall be required for each clause. [¶] (d) In the event the contract contains an arbitration clause, the contract attachment pertaining to arbitration shall contain notice that under Section 1430, the patient may not waive his or her ability to sue for violation of the Patient's Bill of Rights."

admissions contracts package. The *Garrison* court was correct in characterizing the execution of the arbitration agreements as "part of the health care decisionmaking process." (*Garrison, supra*, 132 Cal.App.4th at p. 266.)

■ The decision in *Garrison, supra*, 132 Cal.App.4th 253 is well reasoned. The court in the matter before us erred in disregarding *Garrison* and denying the motion to compel arbitration.

## D. Goliger *and* Pagarigan

The Hogans disagree. They assert that the cases of *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374 [19 Cal.Rptr.3d 819] and *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298 [120 Cal.Rptr.2d 892] are better reasoned than *Garrison, supra*, 132 Cal.App.4th 253 and should be applied. However, those two cases are clearly distinguishable from both *Garrison, supra*, 132 Cal.App.4th 253 and the case before us. *Goliger* and *Pagarigan* are factually similar to *Garrison* and the case before us, but for one material exception. In neither *Goliger* nor *Pagarigan* did the child(ren) admitting the parent into a health care facility hold a health care power of attorney. Consequently, each of those cases analyzed the authority of the child(ren) to enter into arbitration agreements on behalf of the ailing parent *in the absence* of a health care power of attorney. As Country Villa argues, the distinction is critical. *Goliger* and *Pagarigan* are inapposite.

## E. *Public Policy Issues*

The Hogans maintain that the trial court properly denied the motion to compel arbitration because to do otherwise would be to violate public policy principles underlying the California Constitution and the Elder Abuse and Dependent Adult Civil Protection Act. We are not persuaded.

■ Article 1, section 16 of the California Constitution provides that a jury trial "is an inviolate right," but it also provides that a jury trial may be waived under certain circumstances. As the California Supreme Court said in *Madden v. Kaiser Foundation Hospitals, supra*, 17 Cal.3d 699, "it has always been understood without question that parties could eschew jury trial either by settling the underlying controversy, or by agreeing to a method of resolving that controversy, such as arbitration, which does not invoke a judicial forum." (*Id.* at p. 713.) The court concluded: "We shall reject . . . plaintiff's contention that the arbitration provision violates constitutional and statutory provisions protecting the right to trial by jury. Persons entering into

arbitration agreements know and intend that disputes arising under such agreements will be resolved by arbitration, not by juries . . . ." (*Id.* at p. 703.) ■ It follows that an agent under a health care power of attorney such as the one before us is empowered to execute arbitration agreements, as part of a long-term health care facility's admissions package, without violating the principal's constitutional right to a jury trial. (Cf. *id.* at pp. 703, 706, 709.)

Next, the Hogans assert that to compel them to arbitrate their elder abuse claim would be to thwart the purposes and goals of the Elder Abuse and Dependent Adult Civil Protection Act. Initially, we note that it appears they did not raise this issue before the trial court. We have not located any discussion of this issue either in their opposition to the motion to compel or in the reporter's transcript of the hearing on the motion. This being the case, we may treat the point as waived. (*In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1303, fn. 15 [112 Cal.Rptr.2d 692].)

This notwithstanding, we observe that the two cases the Hogans cite, *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771 [11 Cal.Rptr.3d 222, 86 P.3d 290] and *Delaney v. Baker* (1999) 20 Cal.4th 23 [82 Cal.Rptr.2d 610, 971 P.2d 986], contain background information on the history of the Elder Abuse and Dependent Adult Civil Protection Act. However, they do not address the propriety of arbitration for the resolution of elder abuse disputes or give any indication that the policies favoring the enforcement of arbitration agreements (*Madden v. Kaiser Foundation Hospitals, supra,* 17 Cal.3d at p. 706) conflict with the policies aimed at "protect[ing] a particularly vulnerable portion of the population from gross mistreatment in the form of [elder] abuse and custodial neglect" (*Delaney v. Baker, supra,* 20 Cal.4th at p. 33). In short, the Hogans have not proved their point even were we to entertain it.

F. *Void for Vagueness*

The Hogans raise another new point on appeal. They contend that the arbitration agreement in question is unenforceable because it does not sufficiently identify the parties to be bound other than Sarah. Country Villa, of course, asserts that there is no uncertainty as to the parties who are bound by the arbitration agreement. Moreover, all of the Country Villa parties desire to be bound by the arbitration agreement in any event. Whether the arbitration agreement sufficiently identifies the Country Villa parties is a matter we

need not resolve. The Hogans have waived the point by not raising it in the trial court proceedings. *(In re Santos Y., supra,* 92 Cal.App.4th at p. 1303, fn. 15.)

G. *Code of Civil Procedure Sections 1281.2 and 1281.4*

In addition to the foregoing, the Hogans argue that the trial court could have reached the same result by exercising its discretion to deny the motion to compel arbitration under Code of Civil Procedure section 1281.2.[4] They urge this court to affirm the denial of the motion to compel on this basis. Country Villa, on the other hand, requests that, on reversal of the denial order, this court stay the trial court proceedings, pursuant to Code of Civil Procedure section 1281.4,[5] pending the outcome of the arbitration.

The reporter's transcript of the hearing on the motion to compel reflects that the trial court debated how it would apply Code of Civil Procedure sections 1281.2 and 1281.4, that is whether it would order any stay or permit certain causes of action to proceed before others, in the event that it concluded the arbitration agreements were valid. However, the trial court never reached a decision on the application of those statutory provisions, inasmuch as it ultimately concluded that Barbara did not have the authority to execute the arbitration agreements. Since we have determined that Barbara did have such authority, we remand the matter to the trial court for further consideration of the application of Code of Civil Procedure sections 1281.2 and 1281.4.

---

[4] Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . . [¶] . . . [¶] If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies. . . ."

[5] Code of Civil Procedure section 1281.4 provides: "If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. [¶] . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only."

## III

## DISPOSITION

The order denying the motion to compel arbitration is reversed and the matter is remanded for further proceedings consistent with this opinion. The appellants are entitled to their costs on appeal.

Bedsworth, Acting P. J., and Aronson, J., concurred.