Filed 11/30/21  Certified for Publication 12/21/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

THERESA D.,

     Plaintiff and Respondent,

v.

MBK SENIOR LIVING LLC et al.,

     Defendants and Appellants.

A163312

(Sonoma County
Super. Ct. No. SCV-268130)

Defendants, operators of the Muirwoods Memory Care assisted living facility (Muirwoods), a residential care facility for the elderly (RCFE) appeal an order denying their petition to compel arbitration of plaintiff Theresa D.'s claims against them for elder abuse and neglect.[1]  We agree with the trial court that plaintiff is not bound by an arbitration agreement her daughter signed on her behalf when placing her at Muirwoods, and accordingly we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this action on April 2, 2021, through her son and attorney-in-fact Raymond Donahue, alleging that plaintiff was a resident at

---

[1] Defendants are MBK Senior Living LLC; MBK Real Estate LLC; Muirwoods MSL LLC; MSL Community Management LLC; MSL Holdings IX LLC; Muirwoods Memory Care; and Jaime Gralund.

1

Muirwoods from July 12, 2020 through March 20, 2021, that all adult residents of Muirwoods were dependent adults or elders, that defendants knew she suffered from dementia and was at risk of falls, that they failed to provide adequate care and supervision, and that as a result she suffered four falls at Muirwoods, the fourth fall resulting in a fractured hip and deteriorating health; she became bedbound, she suffered emotional distress, and her need for care and assistance increased. The complaint also alleges she was left in unsanitary conditions and infected with scabies while at Muirwoods.

Defendants moved to compel arbitration of the dispute, asserting that plaintiff's daughter Kellie Tennier, as her authorized representative, signed an arbitration agreement pursuant to her authority to make health care decisions for plaintiff when assisting in her placement at Muirwoods. The arbitration provision required binding arbitration of "any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Community," with the exception of claims involving "unlawful detainer proceedings (eviction) or any claims that can be brought in small claims court," and it included a delegation clause providing that an arbitrator would decide whether a claim or dispute must be arbitrated under the arbitration clause. The arbitration was to be conducted by Judicial Arbitration and Mediation Services (JAMS). The clause specified that the agreement to arbitrate could be withdrawn within 30 days and that "agreeing to arbitration is not a condition of admission to the Community."

In support of their motion, defendants provided the declaration of Jaime Gralund, the former executive director of Muirwoods, who stated Tennier had identified herself as plaintiff's authorized representative with authority to make the health care decisions required for admission and to

2

execute the residence and services agreement, including the arbitration agreement. According to Gralund, "I discussed with Ms. Tennier . . . that signing the Arbitration Agreement was not required for admission to the facility." Defendants also provided a document entitled Physician Orders for Life-Sustaining Treatment, dated July 1, 2020, signed by Tennier as "Legally Recognized Decisionmaker," and JAMS's "Comprehensive Arbitration Rules & Procedures," which provide that the arbitrator will determine "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration."

In opposition to the motion to compel arbitration, plaintiff argued the arbitration provision was unenforceable because she did not sign it and Tennier had neither actual nor ostensible authority to do so on her behalf, and because it was unconscionable. She submitted evidence that Donahue rather than Tennier had a general power of attorney to act on her behalf, and plaintiff's counsel declared that Tennier had been neither appointed as plaintiff's agent under an advance health care directive nor appointed as plaintiff's conservator.

The trial court denied the motion to compel arbitration, ruling that Tennier was not plaintiff's agent for purposes of binding her to arbitration. Defendants have appealed from this order.

## DISCUSSION

### I. General Legal Principles

In California, " '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) Although public policy favors arbitration, that policy

" ' " 'does not extend to those who are not parties to an arbitration agreement.' " ' " (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057 (*Espejo*).)

We review an order denying a motion to compel arbitration for abuse of discretion unless the matter presents a pure question of law, in which case our review is de novo. (*Espejo, supra,* 246 Cal.App.4th at pp. 1056–1057.) To the extent the court's decision is based on disputed facts, we review the decision for substantial evidence. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71.) There is no dispute as to the operative facts here, and our review is accordingly de novo.

When a party has filed a petition to compel arbitration, the trial court must determine in a summary proceeding whether an "agreement to arbitrate the controversy exists." (Code Civ. Proc., §§ 1281.2, 1290.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412–413.) In that proceeding, "[b]ecause the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal*, at p. 413; accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

When parties have agreed to arbitration, challenges to the validity of the underlying contract are for the arbitrator to decide, but challenges to the validity of the arbitration clause itself are generally for the court. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107–1108 (*Nielsen Contracting*).) There is an exception, however, when "the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator." (*Id.* at p. 1108; accord, *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891–892

4

(*Aanderud*) [noting "clear and unmistakable evidence that the parties intended to arbitrate arbitrability"].)  In such a case, a delegation clause will generally be enforced.  (*Nielsen Contracting*, at p. 1108.)

## II.  Who Decides Whether an Arbitration Agreement Exists?

The fundamental issue in this case is whether an agreement between plaintiff and defendants to arbitrate controversies arising out of her care at Muirwoods was ever formed—that is, whether such an agreement exists. Because plaintiff did not sign the agreement personally, the answer to that question turns on whether Tennier had authority to agree to arbitration on her behalf.  Defendants urge us to treat this threshold issue as one for the arbitrator, rather than for the court, under the delegation provision, which states, "You agree that an arbitrator will decide any question about whether a claim or dispute must be arbitrated under this arbitration clause," and under the rules of JAMS.

We first note that defendants acknowledge that the trial court was authorized to make a preliminary finding as to the existence of an arbitration agreement, determining whether there was a written agreement and whether it was signed on behalf of plaintiff.  Indeed, they would be hard pressed not to do so in light of the well-established rule that "a trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate." (*Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1202.)  But, defendants contend, questions regarding the scope of Tennier's ability to bind plaintiff to arbitration fall outside this rule and are for the arbitrator, not for the court, to decide.

As authority, defendants rely upon *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63 (*Rent-A-Center*).  The issue there was whether, under the Federal Arbitration Act (9 U.S.C. § 1 et seq.), a court could decide the

5

unconscionability of an arbitration agreement where the agreement explicitly assigned that question to the arbitrator. (*Rent-A-Center*, at p. 65.) The agreement there, between the plaintiff and his employer, granted the arbitrator " 'exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Id*. at p. 66.) In seeking to avoid arbitration of his employment discrimination action, the plaintiff argued the arbitration agreement as a whole was unconscionable, but he did not challenge the delegation provision in particular. (*Id*. at pp. 71–73.) The high court concluded the delegation provision was severable from the remainder of the arbitration agreement and, in the absence of a direct challenge to that provision, the plaintiff must submit to the arbitrator the question of whether the arbitration agreement was unenforceable as unconscionable. (*Id*. at pp. 72–76.) The court left open the possibility that, if the unconscionability challenge was to the delegation clause itself, the question would be one for the court rather than the arbitrator. (*Id*. at p. 74; see *Gibbs. v. Sequoia Capital Operations, LLC* (4th Cir. 2020) 966 F.3d 286, 291 [under *Rent-A-Center*, court may consider enforceability of delegation clause where specific objection is raised]; *Nielsen Contracting*, *supra*, 22 Cal.App.5th at pp. 1109–1114 [court properly ruled on enforceability of delegation clause where party raised specific challenge to it].)

*Rent-A-Center* does not support defendants' position because it does not suggest that a party may be forced to submit to an arbitrator the existence, validity, or enforceability of an arbitration agreement if the party *has not agreed to do so*, either personally or through someone authorized to agree to arbitration on her behalf. Such a conclusion would fly in the face of the

6

principle that arbitration agreements are governed by contract law and construed to effectuate the intentions of the parties. (See *Aanderud, supra,* 13 Cal.App.5th at p. 890; see also *Rent-A-Center, supra,* 561 U.S. at pp. 67–68.) There is no public policy in favor of forcing to arbitration a person who has not agreed to it (*Aanderud,* at p. 890), a rule that should apply with particular force under the " '*heightened* standard' " that requires a " 'clear and unmistakable' " delegation of authority to the arbitrator to decide questions of arbitrability (*id.* at p. 892).

Other cases on which defendants rely are no more helpful to their position. *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 551, emphasized that "[t]he issue of who should decide arbitrability turns on *what the parties agreed* [*to*] in their contract." (Italics added.) *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1122–1123, held that an arbitrator should decide issues concerning the scope of an arbitration clause when "*the parties* clearly and unmistakably" so agreed. (Italics added.) And the high court explained in *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 139 S.Ct. 524, that "[w]hen *the parties' contract* delegates the arbitrability question to an arbitrator, a court may not override the contract, . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." (*Id.* at p. 529, italics added.) Nothing in those cases suggests a person who has *not* entered into an arbitration agreement may be required to submit any threshold issue to an arbitrator. (See *Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 473 [authorizing arbitrator to decide what issues are arbitrable does not "give the arbitrator the power to compel *a nonsignatory* to the agreement to become a party to the arbitration"].)

7

Again relying on *Rent-A-Center*, defendants insist that the trial court should have delegated to the arbitrator the question of whether an arbitration agreement exists because plaintiff raised no specific challenge to the delegation clause separate from the arbitration clause as a whole. This contention lacks merit. The question in *Rent-A-Center* was whether, where there was no claim that a delegation clause was unconscionable, the court should enforce the clause and allow the arbitrator to determine whether the arbitration agreement as a whole was unconscionable. (*Rent-A-Center*, *supra*, 561 U.S. at pp. 70–75.) But here, the question is simply whether plaintiff entered at all into the arbitration agreement of which the delegation clause is a part. In the absence of an agreement, made either directly by plaintiff or by one capable of binding her to arbitration, there would be no basis to require plaintiff to submit *any* issue to the arbitrator.

We therefore conclude the initial determination of whether Tennier was authorized to agree to arbitration on plaintiff's behalf is one for the court, not the arbitrator.

## III. Authority to Bind Plaintiff to Arbitration

The trial court concluded Tennier did not have authority to bind plaintiff to arbitrate her disputes with defendants. Defendants argue this conclusion was error under the laws governing RCFE's.

An RCFE is "a housing arrangement chosen voluntarily by persons 60 years of age or over, or their authorized representative, where varying levels and intensities of care and supervision, protective supervision, personal care, or health-related services are provided." (Health & Saf. Code, § 1569.2, subd. (p)(1); see Cal. Code Regs., tit. 22, § 87101(r)(5).) The applicable regulations define " '[r]epresentive' " as "an individual who has authority to act on behalf of the resident; including but not limited to, a conservator,

8

guardian, person authorized as agent in the resident's valid advance health care directive, the resident's spouse, registered domestic partner, *or family member*, a person designated by the resident, or other surrogate decisionmaker designated *consistent with statutory and case law*." (22 Cal. Code Regs., § 87101(r)(3), italics added.)

The question here is not whether Tennier, as plaintiff's daughter, had authority to place plaintiff in Muirwoods, and we will assume for purposes of our analysis that she did. The question is whether in the course of so doing she *also* had authority to bind plaintiff to arbitration. A series of cases has considered whether and in what circumstances a family member has that power when placing an elderly relative in an RCFE or nursing home.

In a case defendants contend supports their position, *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253 (*Garrison*) considered whether a decedent's daughter, the attorney in fact under durable powers of attorney for health care and for financial matters, was authorized to enter into a binding arbitration agreement on her mother's behalf when admitting her to a facility the appellate court described as a residential care facility. (*Id*. at pp. 256, 262.) The reviewing court concluded the daughter had such authority based on her durable power of attorney for health care, which authorized her to make " 'all health care decisions' " and did not restrict her authority as agent to enter into an arbitration agreement on the mother's behalf. (*Id*. at p. 265.) As the *Garrison* court viewed the matter, "[w]hether to admit an aging parent to a particular care facility is a health care decision," and " 'an agent or other fiduciary who contracts for medical treatment on behalf of his beneficiary retains the authority to enter into an agreement providing for arbitration of claims for medical malpractice.' " (*Id*. at pp. 264, 266.)

9

The court in *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1129 disagreed with *Garrison* to the extent that case concluded the term " 'health care decisions' . . . encompasses the execution of arbitration agreements on behalf of the patient." But whatever the resolution of this question, *Garrison* is easily distinguishable from the case before us because there is no indication Tennier had express authorization to make health care (or financial) decisions for plaintiff through a durable power of attorney or any other vehicle. Rather, it appears she acted solely in her capacity as a family member. The court in *Garrison* considered this difference dispositive, expressly distinguishing two earlier cases, *Pagarigan v. Libby Center Care, Inc.* (2002) 99 Cal.App.4th 298 (*Pagarigan*) and *Golinger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374 (*Golinger*) on the ground that in neither case did the adult child who secured medical care for an aged parent act pursuant to a durable power of attorney. (*Garrison*, *supra*, 132 Cal.App.4th at pp. 264–265.)

The *Pagarigan* court concluded the status of two adult children of the deceased as next of kin did not authorize them to bind her to an arbitration agreement. (*Pagarigan, supra*, 99 Cal.App.4th at p. 302.) The court noted that the children had authority as next of kin to make medical decisions for the patient at the request of the treating physician (see Health & Saf. Code, § 1418.8), but concluded that authority did not "translate[] into authority to sign an arbitration agreement on the patient's behalf at the request of the nursing home." (*Pagarigan*, at p. 302.) The court also rejected the argument that since the next of kin had authority to sign the admission agreement on her behalf (Cal. Code Regs, tit. 22, § 72527, subd. (c)) they had implicit authority to sign an arbitration agreement, concluding that if the Legislature

10

and the Department of Health Services had wanted to confer that authority on the next of kin, "they knew how to say so." (*Pagarigan*, at pp. 302–303.)

*Pagarigan* was followed by *Golinger*, which concluded that a daughter whom the mother allowed to make medical decisions for her did not have authority to bind her to an arbitration agreement. (*Golinger*, *supra*,123 Cal.App.4th at pp. 376–377; see *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 268 [noting "critical" distinction between *Garrison*, where child admitting parent to facility had health care power of attorney, and *Pagarigan* and *Golinger*, where they did not]; see also *Gordon v. Atria Management Co., LCC* (2021) 70 Cal.App.5th 1020, 1026-1027, 1030 [durable power of attorney authorized son to enter into arbitration agreement].)

Defendants seek to distinguish *Pagarigan* and *Golinger* on the ground that the facilities in question there were not RCFE's but skilled nursing facilities, which are subject to regulations that require any arbitration agreement to be separate from the standard admission agreement. (See Cal. Code Regs., tit. 22, § 72516, subd. (d).) In failing to set a similar limitation on the use of arbitration agreements in RCFE agreements, defendants argue, the Legislature implicitly *allowed* arbitration clauses in admission agreements. As a further indication that the differing regulations for skilled nursing facilities and RCFE's lead to different results, they point out that the RFCE regulations define " 'Admission Agreement' " to include "all documents that a resident or resident's representative must sign at the time of, or as a condition of, admission," without carving out an exception for arbitration agreements. (Cal. Code Regs., tit. 22, § 87101, subd. (a)(2).)

These distinctions do not rob *Pagarigan* and *Golinger* of their persuasive value in the situation before us. First, as plaintiff points out, the

"Resident's Bill of Rights" for RCFE's (Health & Saf. Code, § 1569.261 et seq.) prohibits an admission contract, "including all documents that a resident or his or her representative is required to sign as part of the contract for, or as a condition of, admission" to an RCFE, from requiring the resident to waive "benefits or rights to which he or she is entitled under this chapter or provided by federal or *other state law* or regulation" (Health & Saf. Code, § 1569.269, subd. (c), italics added).  An arbitration agreement is indisputably a waiver of the patient's legal rights, including the right to a jury trial. (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 594 (*Flores*).)  And here, although the arbitration clause was placed within the admission agreement, the agreement itself recited that agreeing to arbitration was *not* a condition of admission, and Tennier was so informed. Because the arbitration provision was optional, with its own signature line, it was in essence a separate agreement, and defendants have not shown Tennier, who did not act pursuant to a durable power of attorney or similar authorization, could bind a plaintiff to an arbitration agreement as part of authorizing her admission to an RCFE.

This point is illustrated in a different context in *Holley v. Silverado Senior Living Management, Inc.* (2020) 53 Cal.App.5th 197.  There, the temporary conservators of the person (but not the estate) of a woman suffering from dementia admitted her to a senior living facility, signing an arbitration agreement on her behalf in the course of so doing.  (*Id*. at pp. 199–200.)  Noting the limited powers of temporary conservators, the reviewing court concluded it was "simply beyond their powers without the court's approval" to relinquish on her behalf "an important right—the right to use the courts for redress of grievances."  (*Id*. at p. 203.)  And under the governing law, the conservators could not make medical decisions for her

12

without a court adjudication that she lacked capacity to make such decisions for herself, an adjudication that had not yet been made when the agreement was signed. (*Id*. at pp. 203–204.) But *Holley* is of only limited assistance in the case before us because, although the opinion discloses that at least one of the conservators was the elderly woman's adult child (*id*. at p. 200), the court did not discuss the daughter's ability *as a family member* to act on her behalf.

The parties dispute the effect of *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937 (*Hutcheson*). The decedent there had executed a health care power of attorney (Prob. Code, § 4671, subd. (a)) appointing her niece to make health care decisions for her (*Hutcheson*, at pp. 941–942, 946), and later a personal care power of attorney (Prob. Code, §§ 4123, subd. (a), 4450, subd. (b), 4459, subd. (d), 4460, subd. (a)) appointing both her sister and the niece to make decisions regarding her personal care, claims, and litigation and to enter into contracts to accomplish those purposes, but not to make health care decisions (*Hutcheson*, at pp. 942, 945–946). The sister later admitted the decedent to an RCFE and signed on her behalf an admission agreement that contained an arbitration clause. (*Id*. at p. 942.) In an action against the facility after the decedent's death, the facility sought arbitration, contending the decision to admit her was not a health care decision and was authorized under the personal care power of attorney. (*Id*. at pp. 943–944.) The court rejected this contention, noting that RCFEs may provide medical care such as dementia care and employ medical professionals, and that the facility in question in fact provided such services to the decedent. (*Id*. at pp. 948–950.) Admission to the facility was thus a health care decision. (*Id*. at p. 941.) In the course of its discussion, the *Hutcheson* court recognized that other people—including next of kin—may make health care decisions for an incompetent relative who did not execute a

13

health care power of attorney, but concluded that where such a power of attorney exists and is known to the health care provider, the attorney in fact so appointed has priority for health care decisions. (*Id*. at p. 957; see Prob. Code, § 4685.) Because the sister had no authority to make the health care decision, she had no authority to execute an arbitration agreement as part of a health care decision, and the agreement was void. (*Hutcheson*, at p. 957.)

Defendants distinguish *Hutcheson* on the ground that here, no one holds a health care power of attorney, and Tennier was authorized as a family member to place plaintiff in an RCFE. As a result, they argue, Tennier could bind plaintiff to arbitration as part of the health care decision to admit her to Muirwoods. The trial court rejected this argument, as do we. Although a family member may place a person in an RCFE in appropriate circumstances (22 Cal. Code Regs., § 87101(r)(3)), the governing statutes and regulations say nothing about allowing the family member to waive the resident's legal right to seek redress through the courts, and, as we have already explained, state law did not allow, and the agreement here did not provide, that agreeing to arbitration would be a condition of admission. In the absence of any action on plaintiff's part granting, or implying she had granted, Tennier authority to waive her right of access to the courts, we agree with the trial court that she lacked that power. (See *Flores, supra,* 148 Cal.App.4th at pp. 587–588 [no ostensible agency absent "intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists"].)

Defendants argue that even if plaintiff is not a signatory to the arbitration agreement, she may still be compelled to arbitrate her dispute under a theory of equitable estoppel. *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222 (*JSM Tuscany*) sets forth several situations in

14

which a nonsignatory may be required to arbitrate a dispute under this theory. First, " 'a nonsignatory *defendant* may invoke an arbitration clause to compel a signatory *plaintiff* to arbitrate its claims when the causes of action against the signatory are "intimately founded in and intertwined" with the underlying contract obligations.' " (*Id*. at p. 1237, italics added.) Here, in contrast, plaintiff is *not* a signatory to the arbitration agreement.

*JSM Tuscany* went on to apply to nonsignatory plaintiffs the general rule that "[w]hen a plaintiff brings a claim which *relies on contract terms* against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." (*JSM Tuscany*, *supra*, 193 Cal.App.4th at p. 1239, citing *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 272.) The court explained that applying estoppel against a nonsignatory plaintiff may be particularly appropriate where "all of the plaintiffs, signatory and nonsignatory, are related entities. A nonsignatory can be compelled to arbitrate when a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to arbitrate as well." (*JSM Tuscany*, at p. 1240.) These rules do not assist defendants. Defendants make no showing that plaintiff's claims for elder abuse and negligence rely on the terms of the admission agreement rather than on defendants' alleged violation of duties imposed by law. Tennier is not a plaintiff in this action, and defendants have not shown she signed the agreement as a party rather than as plaintiff's putative representative.

We conclude, therefore, that Tennier did not bind plaintiff to arbitration. Because we affirm the trial court's order on this basis, we need not reach the question of whether the arbitration agreement was unconscionable.

15

## DISPOSITION

The order is affirmed.  Plaintiff shall recover her costs on appeal.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
RODRIGUEZ, J.

*Theresa D. v. MBK Senior Living, LLC et al.* (A163312)

Filed 12/21/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THERESA D., | A163312 |
|     Plaintiff and Respondent, | |
| v. | (Sonoma County |
| | Super. Ct. No. SCV-268130) |
| MBK SENIOR LIVING, LLC et al., | |
|     Defendants and Appellants. | **ORDER FOR PUBLICATION** |

**BY THE COURT\*:**

    The written opinion which was filed on November 30, 2021 has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it ordered published in the official reports.

Date:_____ _____ P. J.

---

    \* Tucher, P.J., Fujisaki, J., and Rodríguez, J. participated in the decision.

1

Trial Court:                    Sonoma County Superior Court

Trial Judge:                  Hon. Patrick M. Broderick

Counsel for Appellants:      Beach Law Group, Thomas E. Beach, Darryl C. Hottinger, and Jay L. Raftery

Counsel for Respondents:    Stebner Gertler Guadagni & Kawamoto, Kathryn A. Stebner, Karman Guadagni, Deena Zacharin; and Needham Kepner & Fish, Kirsten Fish

*Theresa D. v. MBK Senior Living, LLC et al.* (A163312)