[Civ. No. 42828. Second Dist., Div. Two. Aug. 2, 1974.]

In re the Marriage of JACK and SARA GERTRUDE PASHLEY.
JACK PASHLEY, Appellant, v.
SARA GERTRUDE PASHLEY, Respondent

## Counsel

Harold Drooz for Appellant.

David Unrot for Respondent.

## Opinion

**FLEMING, Acting P. J.**—Dissolution of the marriage of Jack and Sara Pashley. Jack appeals that portion of the interlocutory judgment which determines that the family residence, furniture, and furnishings are the separate property of Sara.

### Facts

The Pashleys married in 1946 and two years later purchased a home at 15844 Valley Vista Blvd. in Encino. On 22 April 1972 Jack moved out, no longer able to tolerate Sara's harassing arguments, accusations, and threats of violence. Jack intended to establish a new life with a new job in a new location. Jack sent Sara a letter explaining his plans and stating he no longer wanted the house. Jack included a notarized document he prepared a few days before his departure:

"With this Letter of Authority, I, Jack Pashley, invest in my wife Sara Pashley, sometimes known as Sara G. Pashley, currently resident at 15844 Valley Vista Blvd., Encino, Calif., Power of Attorney. The specific intent of this act is to confer upon Sara Pashley total and complete ownership of all properties hereinafter listed, and to receive all benefits and dividends from, or to sell or otherwise dispose of as she alone shall decide. This grants my prior approval and binding agreement to any and all transactions without benefit of my signature.

| Item | Approximate Value |
|---|---|
| Single family residence located at 15844 Valley Vista Blvd., Encino, Calif. | ($60,000) |
| (Balance after sale) | $15,000 |
| Savings Accounts (2) held at Home Savings & Loan, both located Ventura Blvd. at Encino Branch and Studio City Branch respectively | $ 6,500 |
| 2nd Trust Deed held on property located at 18001 Boris Dr., Encino, Calif. | $ 2,300 |
| 50 Shares Stock—City Investing Mortgage Group | $ 1,200 |
| 300 Shares Stock—Consolidated Resources Industries | $ 1,000 |
| Proceeds from Bell System Savings Plan | $ 2,554 |
| 1966 Cadillac Automobile | $ 800 |
| Total | $29,354 |

To be included in addition to the above are items of undetermined value, to wit, all furnishings and appliances located at 15844 Valley Vista Blvd., Encino. The foregoing is limited by the single·stipulation that my only known indebtedness be cleared, a sum of approximately $1200 in the form of an automobile loan made by the Telco Employees Credit Union, 639 S. New Hampshire, Los Angeles, Calif. The major portion of this encumbrance can be covered by final pay drafts owed by Pac. Tel & Tel Co., and I direct that this be done. Any residue of this debt shall be paid from assets previously stated. In Witness Whereof, I have hereunto set my hand and affixed my seal this twentieth day of April, 1972.

/s/ Jack Pashley
Jack Pashley"

Jack hoped this document and his departure would persuade Sara to stop harassing him and permit him to establish a new life.

Sara paid off Jack's credit union automobile loan out of community property and entered escrow on a sale of the house. The escrow never closed, however. In May 1972 Jack sent Sara a "revocation of power of attorney" and filed a petition for dissolution of their marriage. Sara subsequently followed Jack to Pennsylvania where he had taken new employment. In November 1972 she accosted him in the parking lot at his place of employment and shot him. In December 1972, while Jack was recuperating from his gunshot wound, Sara again accosted Jack in a parking lot, and on her demand, he signed a quitclaim deed to his interest in the house, furnishings, and appliances. He continued to hope Sara would stop harassing him if he gave her the house.

## FINDINGS

The trial court ruled that Sara obtained the December 1972 quitclaim deed by duress, but the court found that Jack was free from duress when he executed the "power of attorney" on 20 April 1972, that he conveyed his interest in the family home, furnishings, and furniture to Sara as her separate property on that date, and that the conveyance constituted a gift by Jack to Sara.

## DISCUSSION

 The record supports the trial court's conclusion that Sara obtained the December 1972 quitclaim deed by duress and therefore the deed lacked validity. (*Wickland* v. *Wickland,* 19 Cal.App. 559, 560-561

[126 P. 507].) But in our view the record does not support the trial court's construction of the April 1972 power of attorney as a completed and present gift of the house, furniture, and furnishings by Jack to Sara. Rather the circumstances surrounding Jack's preparation of the power of attorney and the language of the document itself, taken as a whole, suggest to us a prospective conditional gift of future proceeds from a contemplated sale of the house. ■ A gift to be made in the future is no gift at all, for a gift requires the present and complete divestment of the subject property. (*Savelli* v. *Simon,* 25 Cal.App.2d 365, 367 [77 P.2d 486].)

■ Jack prepared the power of attorney without legal assistance, and his layman's hand scattered highly technical legal terms at random with confounding inconsistency. Jack called the document a power of attorney pursuant to which he granted prior approval of transactions without his signature. Yet he spoke of intent to confer complete ownership in Sara, in which case no power of attorney and no approval, prior or present, would be required for her to deal with the subject property. Jack expressly mentions as his "only known encumbrance" an automobile loan. Yet he implicitly recognizes an additional major encumbrance of $45,000 on the house ($60,000 value minus $15,000 balance after sale).

These apparent contradictions resolve themselves only when viewed in light of Jack's overall intent to leave Sara and begin a new life with a new identity. Jack clearly desired to extinguish whatever current obligations stood against his old identity so he could assume his new identity unencumbered. The debts outstanding against his old identity ran against his automobile and his house. Jack's power of attorney therefore contemplated that Sara would pay off his automobile loan with his last paychecks and pay off the house loan by sale of the house. *If,* Sara would do those things without further harassment of Jack, *then* Jack would not insist on his rightful share of the proceeds of the sale of the house and the other listed items. Jack would have defeated one of his prime objectives by giving Sara his beneficial interest in the house while leaving the house encumbrance outstanding against him.

Thus Jack had no intent that a gift of his interest in the house, furniture, and furnishings should become immediately effective, either absolutely or conditionally. (See *Estate of Pieper,* 224 Cal.App.2d 670, 687-688 [37 Cal.Rptr. 46].) The only present operative effect of the power of attorney was to permit Sara to effectuate a sale of the house without further action by Jack. Since the power of attorney was not coupled with an interest and

since it lacked consideration, Jack could and did revoke that authority in May 1972 before Sara had completed a sale of the house. (Civ. Code, § 2356); *Todd* v. *Superior Court of San Francisco,* 181 Cal. 406, 417 [184 P. 684, 7 A.L.R. 938]; *Charles B. Webster Real Estate* v. *Rickard,* 21 Cal.App.3d 612, 614-615 [98 Cal.Rptr. 559].)

That portion of the judgment appealed from is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Compton, J., and Beach, J., concurred.