[No. G032291. Fourth Dist., Div. Three. May 21, 2004.]

In re Marriage of MONICA MEHREN and CHRISTOPHER DARGAN.
MONICA MEHREN, Respondent, v.
CHRISTOPHER DARGAN, Appellant.

COUNSEL

Brown & Charbonneau, Michele Charbonneau, Laura C. Hess and Gregory G. Brown for Appellant.

The Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Respondent.

OPINION

**RYLAARSDAM, J.**—After obtaining permission from this court pursuant to California Rules of Court, rule 5.180, Christopher Dargan (husband) appealed from an order after a bifurcated trial upholding the validity of a postmarital agreement. In the agreement he promised to grant respondent Monica Mehren (wife) all of his interest in certain of the parties' community property should he use illicit drugs. We conclude that such an agreement is unenforceable because it violates the public policy favoring no-fault divorce. We therefore order the trial court to vacate its order and enter a new order providing that the agreement is unenforceable.

FACTS

Husband has suffered an off-and-on addiction to cocaine for many years. It is not necessary for us to relate his unsuccessful attempts to free himself from his addiction other than to note that several years after their marriage, the parties separated after another episode resulting from husband's use of cocaine. Months later, the parties agreed that husband would return to the family home. Subsequently, the parties entered into an "Agreement re Transfer of Property." The agreement recited that wife "consented to the resumption of marital relations on the condition that [husband] abstain from the deliberate, intentional use or ingestion of any mind altering chemical or substance excluding such use that may be prescribed or approved by a

medical doctor. In the event of such deliberate, intentional use or ingestion of mind altering chemicals or substances by [husband], [husband] agrees that he will forfeit all of his right, title and interest in [described property]." Husband and wife signed the document before a notary public.

Unfortunately, husband did not keep his promise. Thereafter wife filed for divorce, asking that the property described in the agreement be confirmed to her as her separate property. The trial court concluded in a pretrial proceeding that the agreement did not violate public policy. During the subsequent trial, a number of issues concerning the circumstances under which the agreement was prepared and executed were resolved against husband. Some of these issues are also raised in this appeal. But because none of them form the basis for our decision, we will not relate them here or state the disputed facts surrounding the execution of the agreement.

## DISCUSSION

*The Contract Violates Public Policy*

■ . As far as we and the parties were able to determine, the specific issue before us is a novel one. Although reported cases have dealt with contracts between spouses, many of these deal with premarital agreements. But we can look to these cases for guidance. In *In re Marriage of Bonds* (2000) 24 Cal.4th 1 [99 Cal.Rptr.2d 252, 5 P.3d 815], our Supreme Court noted the difference between commercial contracts and contracts regulating the marital relationship (in that case, a premarital agreement). Commercial contracts have a specific object, and parties to such contracts generally enter into them intending that the objects be achieved. Marital contracts, on the other hand, are generally entered into in the expectation that they will never be invoked. (*Id.* at pp. 24–25.) "Furthermore, marriage itself is a highly regulated institution of undisputed social value, and there are many limitations on the ability of persons to contract with respect to it, or to vary its statutory terms, that have nothing to do with maximizing the satisfaction of the parties or carrying out their intent." (*Id.* at p. 25.)

The *Bonds* opinion rejects a freedom-of-contract analysis of marital contracts (*In re Marriage of Bonds, supra,* 24 Cal.4th at p. 25) and recites a number of examples of marital contracts that will not be enforced as violating public policy. (*Ibid.*) Citing Family Code section 721, subdivision (b), *Bonds* also draws a distinction between premarital and postmarital contracts when it notes a difference in the fiduciary relationship between the parties; no such relationship exists preceding the marriage. It does following marriage and therefore affects spouses' ability to enter into contracts between themselves. (*Id.* at p. 27.)

■ Starting with *Bonds*'s conclusion that marriage "is a highly regulated institution of undisputed social value" (*In re Marriage of Bonds, supra,* 24 Cal.4th at p. 25), we must decide whether the statutory regulations pertaining to marriage would be frustrated were we to enforce the agreement. We answer this query in the affirmative. Because the conduct of one spouse would affect the division of community property, the agreement frustrates the statutory policy favoring no-fault divorce.

The case most analogous to the one confronting us here is *Diosdado v. Diosdado* (2002) 97 Cal.App.4th 470 [118 Cal.Rptr.2d 494]. There husband and wife entered into a written agreement wherein each promised to remain faithful to the other; the agreement also provided for $50,000 liquidated damages, to be paid upon dissolution of the marriage, should either spouse breach the agreement. The court adopted the reasoning of the trial court that the agreement was not enforceable "because it was contrary to the public policy underlying California's no-fault divorce laws." (*Id.* at p. 473.) The court noted that since the 1969 enactment of Civil Code section 4506 (now Fam. Code, § 2310), "[f]ault is simply not a relevant consideration in the legal process by which a marriage is dissolved. Recovery in no-fault dissolution proceedings 'is basically limited to half the community property and appropriate support and attorney fee orders—no hefty premiums for emotional angst.' [Citation]" (*Diosdado v. Diosdado, supra,* 97 Cal.App.4th at p. 474.) The *Diosdado* court concluded the liquidated damage clause "attempt[ed] to impose just such a premium for the 'emotional angst' caused by [husband's] breach of his promise of sexual fidelity." (*Ibid.,* fn. omitted.) As such, the contract had an unlawful object and was invalid under Civil Code section 1667. (*Diosdado,* at p. 474.)

■ We see little analytical difference between the angst experienced by the wife in *Diosdado* and the angst undoubtedly suffered by wife here. In this case too, the agreement purports to award a community property premium because of the behavior of husband. Thus, as in *Diosdado,* the agreement attempts to avoid the no-fault provisions of Family Code section 2310. As such, its objective is illegal under Civil Code section 1667, which renders a contract unlawful if it is "[¶] 1. [c]ontrary to an express provision of law; [¶] 2. [c]ontrary to the policy of express law, . . . or, [¶] 3. [o]therwise contrary to good morals."

Wife seeks to distinguish *Diosdado* by arguing that the present "agreement was a contract independent of the court, and required no court action," while the agreement in *Diosdado* "could only be implemented in the context of a divorce suit." True, the *Diosdado* agreement would only be effective upon a dissolution. Thus the policy considerations are slightly different. It is also correct that in theory, and assuming the agreement was valid, once husband

started again using illicit drugs, wife could have invoked her rights under the agreement and acquired the community property assets without obtaining a divorce. But such a scenario would not affect the relationship of the parties in the same manner as a transfer of these property interests following a divorce. And, significantly, wife did not seek to obtain the transfer of husband's share of the community property when he again relapsed into his addiction; she sought it as part of the dissolution proceedings. Further, the very issue determining whether she was entitled to the property would necessarily involve a judicial determination concerning husband's drug use, a factual adjudication of fault that the no-fault statute seeks to avoid.

*Was the "Agreement" a Contract?*

For the first time during oral argument, wife's lawyer argued that the "agreement" did not constitute a contract but rather was a gift subject to a condition precedent. Although case law uses the terms "contract" and "agreement" interchangeably, a leading treatise on contract law recognizes that the latter term is broader. "In some respects, the term agreement is a broader term than contract, and even broader than the term bargain or promise. It also covers executed sales, gifts and other transfers of property." (1 Williston on Contracts (4th ed. 2003) § 1.3, fn. omitted.)

■ But, assuming the distinction makes a difference, wife waived such an argument by failing to raise it in the trial court. (*366-386 Geary St., L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1199 [268 Cal.Rptr. 678].) And even here, in her respondent's brief, wife acknowledges that the "agreement" constitutes a contract. For example, as we noted earlier, in attempting to distinguish *Diosdado v. Diosdado, supra*, 97 Cal.App.4th 470, she argued "[t]he . . . agreement was a *contract* independent of the court, and required no court action." (Italics added.) And later in the brief, arguing that husband did not lack capacity to consent to the agreement she states, "at the time [husband] drew up and entered into this *contract* he was a lawyer . . . ." (Italics added.) Furthermore, the agreement has all the elements of a contract. It recites that wife "consented to the resumption of marital relations on condition that [husband] abstain from [illegal drug use]." In addition, the agreement contains a formal consideration clause. It is basic that what distinguishes a contract from a gift is that the latter only takes place in the absence of consideration. (Civ. Code, § 1146; *Jaffe v. Carroll* (1973) 35 Cal.App.3d 53, 59 [110 Cal.Rptr. 435].)

■ But, even were we to determine that the agreement was not a contract but rather a gift subject to a condition precedent, as wife belatedly argues, it would be unenforceable. Where a condition precedent to a gift has the effect of preserving the purported donor's dominion and control over the

property, the transaction " 'becomes merely an unexecuted gift and unenforceable promise to make a future gift. [Citation.]' " (*Rolinson v. Rollinson* (1955) 132 Cal.App.2d 387, 390 [282 P.2d 98]; see *In re Marriage of Pashley* (1974) 40 Cal.App.3d 1079, 1083 [115 Cal.Rptr. 537] ["[a] gift to be made in the future is no gift at all"]; see also *Kelly v. Bank of America* (1952) 112 Cal.App.2d 388, 395–397 [246 P.2d 92].) In addition, the gift would fail under Civil Code section 709 which voids an agreement subject to a condition precedent that "requires the performance of an act wrong of itself . . . ."

*The Contract Fails for Lack of Legal Consideration*

■ The Restatement of Contracts provides: "A bargain, the sole consideration of which is refraining or promising to refrain from committing a crime or tort, or from deceiving or wrongfully injuring the promisee or a third person, is illegal." (Rest., Contracts, § 578; see also *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1246–1247 [19 Cal.Rptr.2d 212] [a promise to follow the Code of Fair Campaign Practices is not valid consideration].) Here the sole consideration offered by husband was his promise to refrain from using illegal drugs, a crime. Hence the contract fails.

## DISPOSITION

The trial court is ordered to vacate its order regarding judgment after bifurcated trial and to enter a new order providing that the postmarital agreement between the parties is unenforceable. Appellant shall recover his costs on appeal. The trial court shall determine whether appellant should be awarded attorney fees on appeal and, if so, the amount thereof.

Sills, P. J., and Ikola, J., concurring.

A petition for a rehearing was denied June 9, 2004, and respondent's petition for review by the Supreme Court was denied August 11, 2004. Kennard, J., was of the opinion that the petition should be granted.