Filed 10/1/21; Certified for Publication 10/27/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANET GORDON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ATRIA MANAGEMENT<br>COMPANY, LLC, et al.,<br><br>    Defendants and Appellants. | A161379<br><br>(Contra Costa County<br>Super. Ct. No. MSC2001023) |

Atria Management Company, LLC, ASL Operating Company, LLC, WG Montego Heights SH LP, Atria Senior Living Group, Inc., Ventas AOC Operating Holdings, LLC and Ventas AOC Operating Holdings, Inc. (collectively, Atria) appeal from an order denying their petition to compel arbitration of claims brought by Janet Gordon (Janet) through her son and guardian ad litem, Randall Gordon (Randall).[1] Atria contends the court erred by (1) sustaining evidentiary objections to the arbitration agreement and a power of attorney held by Randall; (2) ruling that Randall was not authorized to sign the arbitration agreement on Janet's behalf because the power of attorney did not extend to healthcare decisions; and (3) denying the petition to compel arbitration even though Randall had ostensible authority to enter

---

[1]     We refer to Janet Gordon and Randall Gordon by their first names for clarity, without disrespect.

into the arbitration agreement. We conclude that Randall was authorized to enter into the arbitration agreement, and we will reverse the order and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

### A. Randall's Durable Power of Attorney

On June 8, 2019, Janet signed a Durable Power of Attorney and Nomination of Conservator (DPOA), appointing Randall and two other individuals as her "co-attorneys-in-fact," who were jointly and severally authorized to act on her behalf and in her "name, place, and stead" as set forth in the DPOA.

The first page of the DPOA informed Janet that the document "may provide the person you designate as your attorney-in-fact with broad powers to dispose, sell, convey, and encumber your real and personal property, and to use your property as security if your agent borrows money on your behalf." (Capitalization removed.) It further advised that the DPOA "does not authorize anyone to make medical and other health care decisions for you."

The ensuing paragraphs of the DPOA spelled out the agents' authority. Paragraph 5, for example, empowered Randall to "demand, arbitrate, and pursue litigation on [Janet's] behalf concerning all rights and benefits to which [Janet] may be entitled; and to compromise, settle, and discharge all such matters as the agent considers appropriate under the circumstances." Other paragraphs gave Randall authority in regard to Janet's real property, partnership interests, benefits, accounts, personal property, tax returns, and other matters.

Of particular interest here is Paragraph 21, which the parties debate at length. In part, the paragraph authorized Randall to "do all things and enter into all transactions necessary to provide for the Principal's personal care and

2

to maintain the Principal's customary standard of living; to provide suitable living quarters for the Principal; and to hire and compensate household, nursing, and other employees as the agent considers advisable for the Principal's well being."  Paragraph 21 continued:  "The above shall specifically include but not be limited to the authority to pay the ongoing costs of maintenance of the Principal's present and future residence, such as interest, taxes, repairs; to procure and pay for clothing, transportation, medicine, medical care, food, and other needs; *and to make arrangements, enter into contracts, and commit the Principal's resources on the Principal's behalf with respect to provision of residential care for the Principal in a convalescent hospital, skilled nursing home, or other alternative residential facility.*"  (Italics added.)

Under the heading, "GUIDELINES FOR CARE AT RESIDENCE—*NON-HEALTH CARE DECISIONS*," Paragraphs 21(a) and 21(b) further authorized Randall to decide whether to move Janet out of her residence. (Italics added.)  Under Paragraph 21(a), Randall was to maintain Janet's personal home as her residence "for so long as the Agents, in their discretion, determine that [Janet] is capable or continuing to reside" there, such that "maintaining her residency in the Home will not be detrimental to her physical or mental condition."  Paragraph 21(b) provides:  "Notwithstanding [Janet's] preference to reside at Home, [Randall] may exercise the Personal Care Powers described herein if [Randall] determines, in his [] discretion, that moving [Janet] out of [her] Home is necessary and in the best interests of [Janet] after consultation with [Janet's] Agent under an effective Advance Health Care Directive, if any, and considering all the facts and circumstances relating to [Janet's] mental and physical health care needs, including, without limitation, whether a change in [Janet's] living situation would allow

3

for a quicker response in a medical emergency, or more suitable medical treatment to meet the specific medical and health needs of [Janet]."

More broadly, Paragraph 22 gave Randall authority "[g]enerally to do, execute, and perform any other act, deed, matter, or thing, that in the opinion of the agent ought to be done, executed, or performed in conjunction with this power of attorney, of every kind and nature, as fully and effectively as [Janet] could do if personally present.  The enumeration of specific items, acts, rights, or powers in this instrument does not limit or restrict, and is not to be construed or interpreted as limiting or restricting, the general powers granted to the agent except where powers are expressly restricted."

In addition, Paragraph 26 confirmed that Randall's "signature under the authority granted in this power of attorney may be accepted by any third party or organization with the same force and effect as if [Janet was] personally present and acting on [Janet's] own behalf."  Pursuant to Paragraph 34, each attorney-in-fact was authorized to act either alone or jointly.

B.  Agreement to Arbitrate

In July 2019, Janet moved into a residential care facility, Atria Walnut Creek.  It is not alleged, or explained in the parties' appellate briefs, by whose authority Janet was admitted to the facility or the terms of any admission agreement.

On June 27, 2019, apparently on Janet's behalf, Randall signed a one-page "Agreement to Arbitrate Disputes (CA)" (Arbitration Agreement) prepared by Atria Walnut Creek.  Article 1 of the Arbitration Agreement provided:  "It is understood that any and all legal claims or civil actions arising out of or relating to care or services provided to you at Atria Walnut Creek by Atria Senior Living Group, Inc. ("Atria") (e.g. claims for refund,

4

breach of contract, intentional tort, wrongful death, elder abuse, unfair business practices) or relating to the validity or enforceability of the Residency Agreement for Atria Walnut Creek, will be determined by submission to arbitration as provided by: (1) the Federal Arbitration Act ("FAA"), 9 U.S.C, Sections 1–16, or (2) CA law, in the event a court determines that the FAA does not apply. This includes claims or actions regarding whether the care or services you received, or lack of care or services, was unnecessary or unauthorized or was improperly, negligently, or incompetently rendered. **Both parties to this contract, by entering into it, are giving up their constitutional right to have any such disputes decided in a court of law before a jury, and instead are accepting the use of arbitration.**" (Original bolding.)

C. <u>Janet's Injury and Lawsuit Against Atria</u>

While living at Atria Walnut Creek, Janet allegedly fell and broke her hip on July 31, 2019.

On June 9, 2020, Janet, through Randall as her guardian ad litem, filed a lawsuit against Atria pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.), asserting causes of action for elder neglect and abuse, negligence and negligence per se, fraud, financial elder abuse, and unfair business practices (Bus. & Prof. Code, § 17200). In essence, Janet alleged that Atria failed to assist with her activities of daily living, failed to supervise her, and failed to check on her after knowing she felt dizzy and unwell, leading to her falling and breaking her hip.

On July 27, 2020, Atria filed a petition to compel arbitration based on the Arbitration Agreement. Atria claimed that Randall, as Janet's attorney-in-fact, entered into a valid arbitration agreement on her behalf.

5

Janet opposed the petition, contending the arbitration clause was not enforceable because (1) it was not signed by Janet or an agent pursuant to a valid power of attorney for healthcare; (2) the arbitration provision was unenforceable because the provider selected by Atria—the National Arbitration Forum (NAF)—had been enjoined from administering consumer arbitrations in California; and (3) the arbitration clause was procedurally and substantively unconscionable. Janet also objected to Atria's evidence of the Arbitration Agreement and DPOA. Atria filed a reply brief.

After a hearing on October 8, 2020, the trial court denied Atria's petition to compel arbitration. The court sustained Janet's evidentiary objections to the Arbitration Agreement and DPOA based on lack of personal knowledge and lack of authentication. Nevertheless considering the terms of the Arbitration Agreement and DPOA as set forth in Atria's petition, the court ruled that Randall lacked authority to bind Janet to the arbitration agreement under *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937, because a person acting only under a personal care power of attorney was not authorized to make health care decisions on behalf of the principal, and admitting the principal to a residential care facility for the elderly was a health care decision. The court noted that Janet was issued an " 'alert-lanyard' " to use in cases of emergency, which suggested to the court that Janet was relying on Atria to provide her with medical care. The court did not decide Janet's other arguments against arbitration. This appeal followed.[2]

_____

[2] The record and civil docketing statement contain a copy of a proposed order, but not a copy of the order entered by the court. The parties treat the proposed order as the actual order, as do we.

6

## II. DISCUSSION

As mentioned, Atria contends the trial court erred by (1) sustaining evidentiary objections to the Arbitration Agreement and DPOA; (2) ruling that Randall was not authorized to sign the arbitration agreement on Janet's behalf because the power of attorney he held did not extend to healthcare decisions; and (3) denying the petition to compel arbitration even though Randall had ostensible authority to enter into the arbitration agreement. We address the second issue to resolve the appeal.[3]

### A. Randall's Authority to Enter into the Arbitration Agreement

Pursuant to Code of Civil Procedure section 1281.2, a trial court shall order arbitration of a controversy if an agreement to arbitrate the controversy exists, with certain exceptions inapplicable here. California has a strong public policy in favor of arbitration, but " 'a party cannot be compelled to arbitrate a dispute that [s]he has not agreed to resolve by arbitration.' " (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142.)

Although the parties' briefs devote several pages to the law concerning the interpretation of arbitration provisions, none of that is relevant here. The question is not what the Arbitration Agreement covers, but whether

---

[3] Although Atria contends the court erred in sustaining Janet's objections to the Arbitration Agreement and DPOA, the court considered the terms of those documents based on the recitals in the briefs. (See Cal. Rules of Court, rule 3.1330; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219.) Atria therefore fails to establish prejudicial error. Atria's contention that Randall had ostensible authority to enter into the Arbitration Agreement also misses the mark, because Atria did not present evidence that Janet, as the principal, did anything to cause or allow Atria to believe Randall was authorized to bind her to arbitration (except signing the DPOA – but if that is sufficient, there is no resort to ostensible authority). (Civ. Code, § 2317.) Because we resolve the appeal on other grounds, we need not address these issues further.

7

Randall had authority to sign the Arbitration Agreement on Janet's behalf. That question turns on the scope of the DPOA.

When construing a power of attorney, a court must consider the language of the document and give meaning to its terms. (*In re Marriage of Pashley* (1974) 40 Cal.App.3d 1079, 1083; *Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880, 886–887.) The interpretation of a written instrument, such as the DPOA, is a question of law we review de novo. (E.g. *Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 990 [will]; *Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 453 [trust instrument].) To the extent the court's order denying arbitration is based on a factual finding, we review for substantial evidence. (*Ramos v. Westlake Services, LLC* (2015) 242 Cal.App.4th 674, 686.)

1. <u>The DPOA Authorized Entry into the Arbitration Agreement</u>

The language of the DPOA authorized Randall to agree that Janet's legal claims would be submitted to arbitration. Paragraph 21 of the DPOA empowered Randall to "enter into contracts . . . with respect to provision of residential care for [Janet] in [a] residential facility;" the Arbitration Agreement is a contract executed in connection with Janet's residential care at Atria Walnut Creek. In addition, paragraph 5 of the DPOA authorized Randall to "demand, *arbitrate,* and pursue litigation on [Janet's] behalf concerning all rights and benefits to which [Janet] may be entitled; and to compromise, settle, and discharge all such matters as the agent considers appropriate under the circumstances." (Italics added.) The power to submit Janet's claims to arbitration reasonably includes the right to decide that future claims will be arbitrated rather than litigated in court. Moreover, Paragraph 22 empowered Randall "[g]enerally to do, execute, and perform any other act, deed, matter, or thing, that in the opinion of the agent ought to

8

be done, executed or performed in conjunction with this power of attorney," and the "enumeration of specific items, acts, rights, or powers in this instrument does not limit or restrict, and is not to be construed or interpreted as limiting or restricting, the general powers granted to the agent except where powers are expressly restricted." The execution of an arbitration agreement as to disputes arising out of Janet's stay in the residential care facility is not expressly restricted in the DPOA, but instead falls within the broad scope of its grants of authority. Randall was authorized to enter into the Arbitration Agreement on Janet's behalf.

2. Healthcare Decision

Janet argues (and the trial court ruled) that Randall lacked authority to enter into the Arbitration Agreement because the DPOA stated it did not "authorize anyone to make 'medical and other health care decisions' " and, Janet contends, the decision to agree to arbitration was a healthcare decision under *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937 (*Hutcheson*). Janet misreads *Hutcheson*.

In *Hutcheson,* an individual (Lovenstein) had signed a health care power of attorney (Prob. Code, § 4671, subd. (a)) appointing her niece to make health care decisions for her. Later, Lovenstein signed a "statutory form" power of attorney as set forth in the Power of Attorney Law (Prob. Code, § 4000 et seq.), which authorized her sister to act for her on matters including personal and family maintenance, explicitly exclusive of health care decisions. (*Hutcheson, supra*, 17 Cal.App.5th at pp. 941–942.) The sister with the personal care power of attorney admitted Lovenstein to a residential care facility for the elderly, pursuant to a contract that contained an arbitration clause. (*Id*. at p. 942.) On the day of Lovenstein's admission, a medical appraisal showed she was suffering from dementia and seizures, and

9

the facility was informed that a health care power of attorney was held by the niece. (*Id*. at pp. 942–943.) After Lovenstein died, the niece (as Lovenstein's successor) and the sister sued the facility, the facility petitioned to compel arbitration pursuant to the arbitration provision in the admission agreement, and the trial court denied the petition. (*Id*. at p. 943.)

On appeal, the court affirmed. The court noted that the personal care power of attorney excluded health care decisions. (*Hutcheson, supra*, 17 Cal.App.5th at p. 946.) It then turned to the Health Care Decisions Law (Prob. Code, § 4600 et seq.), which states that "health care" means "any care, treatment, service, or procedure to maintain, diagnose, or otherwise affect a patient's physical or mental condition" (Prob. Code, § 4615), and a "health care decision" is a decision "regarding the patient's health care," including selection of health care providers and institutions (Prob. Code, § 4617). (*Hutcheson, supra*, at p. 946.) The court ruled that, given the facts of the case, the contract with the facility was to provide Lovenstein with health care (as well as personal care) because the facility had agreed to provide dementia care. (*Id*. at pp. 949–950.) Since admitting Lovenstein to the facility was thus a health care decision, and the sister's personal care power of attorney explicitly denounced authorization to make health care decisions, the admission agreement that included the arbitration provision was unenforceable. (*Id*. at p. 957.)

*Hutcheson* is distinguishable from this case for a number of reasons. First, unlike *Hutcheson*, there is no evidence that the principal (Janet) was admitted to the facility (Atria Walnut Creek) for the purpose of obtaining health care. No declaration or documentation to that effect appears in the record. Even if we were to look to the pleadings, Janet's unverified complaint shows that the purpose for admitting Janet was not to obtain medical care,

10

but to obtain supervision and assistance with activities of daily living, such as fall prevention, assistance with showering, dressing, and transfers. While the complaint also alleges Atria "represented to [Janet] and her family that they would be providing for [Janet's] medical needs" and that Atria Walnut Creek was "more like a medical facility rather than the hotel with little to no supervision it turned out to be," and further alleges that Atria Walnut Creek denied Janet medical treatment for her injury, the upshot of these allegations was not that Janet was admitted to obtain medical care, but that Atria perpetrated a "bait-and-switch scheme" and later failed to provide appropriate care after she fell due to Atria's failure to assist and supervise her. And while it was further alleged that Janet was issued an emergency alert lanyard, we fail to see how providing a device that notifies others when an elderly person has fallen constitutes medical care.[4]

Second, unlike the "statutory form" personal care power of attorney in *Hutcheson* (see Prob. Code, § 4401), the DPOA held by Randall expressly authorized him to "make arrangements, enter into contracts, and commit [Janet's ] resources on [Janet's] behalf with respect to provision of residential care for [Janet] in a convalescent hospital, skilled nursing home, or other alternative residential facility." Paragraphs 21(a) and 21(b) authorized Randall to decide whether to move Janet out of her residence, entitling him to exercise his personal care powers if he determined, in his discretion, that

---

[4] Janet argues that because the court did not issue a statement of decision, we should apply the doctrine of implied findings and presume that the trial court found that Atria was to provide healthcare to Janet and Atria failed to prove the existence of an agreement to arbitrate. Even if the doctrine of implied findings applied, we would only "presume[] the trial court made all necessary findings supported by substantial evidence" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970, 973–974), and here there is no substantial evidence to support such findings.

11

doing so was in her best interests after consulting with a healthcare attorney-in-fact, "if any" (there was none in this case), and considering the facts and circumstances relating to Janet's mental and physical health care needs. These powers were listed under the heading of "NON-HEALTH CARE DECISIONS." Thus, whether the admission of Janet to Atria Walnut Creek was for her medical needs or not, the decision was specifically authorized by the DPOA.[5]

Third, unlike *Hutcheson*, the propriety of Janet's admission into the residential care facility is not even at issue here. The question in *Hutcheson* was whether the decision to admit the individual to the residential care facility fell within the scope of the personal care power of attorney, because the arbitration provision was "*contained in the admission agreement.*" (*Hutcheson, supra*, 17 Cal.App.5th at p. 943, italics added.) Here, the Arbitration Agreement was a standalone agreement and was not a requisite for Janet's admission to Atria Walnut Creek. Indeed, there is no dispute in this appeal that whoever authorized Janet's admission to Atria Walnut Creek had authority to do so. The question in the matter before us, therefore, is not whether Randall had authority under the DPOA to make the decision to

---

[5] Janet argues that Paragraph 21 only allows Randall to commit Janet's monetary resources to *pay* for such things as residential maintenance, medical care, food, transportation, and other needs such as a skilled nursing or a residential facility. That is obviously incorrect, since the DPOA explicitly allows him to "make arrangements" and "enter into contracts," as well as to "commit [Janet's] resources." Janet also argues that language in Paragraph 36 revoking "any prior durable power of attorney other than for health care" shows that the DPOA is not intended to be a health care power of attorney and contemplates a separate document that does. The question, however, is not whether the DPOA is a healthcare power of attorney, but whether the DPOA gave Randall the authority to sign the Arbitration Agreement. Janet presents no evidence of a separate healthcare power of attorney.

admit Janet to Atria Walnut Creek, but to make the decision that any claims Janet would assert in litigation arising out of her stay would be subject to arbitration. That authority is provided in the DPOA, including Paragraph 5 (right to arbitrate) and Paragraph 21 (right to contract with respect to provision for residential care).

The cases on which Janet relies are inapposite. In *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253 and *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, the court ruled that a holder of a healthcare power of attorney had authority to enter into an arbitration agreement on a family member's behalf because "[w]hether to admit an aging parent *to a particular facility* is a health care decision," and the "arbitration agreements were executed as part of the health care decisionmaking process." (*Garrison*, at p. 266; *Hogan*, at p. 268, italics added.) Those cases merely tell us that a healthcare power of attorney is sufficient to confer authority to agree to an arbitration provision within an admission agreement, not that a healthcare power of attorney is required for an agent to have authority to enter into a standalone arbitration agreement. (See *Hutcheson, supra*, 17 Cal.App.5th at p. 956 ["[p]ersons other than those named as attorneys in fact under a health care POA may admit someone to a residential care facility for the elderly"].)

Additional cases cited by Janet involved situations where, unlike here, a family member had no written power of attorney *at all*. (*Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 376–377; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 302; *Flores v. Evergreen at San Diego, LLC (*2007) 148 Cal.App.4th 581, 587; *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 446–451.) Here, Randall had Janet's DPOA, and nothing in the cases cited by Janet suggests the DPOA was

13

insufficient to authorize Randall to enter into an arbitration agreement on Janet's behalf.

The trial court erred in concluding that Randall lacked authority to bind Janet to the Arbitration Agreement. Because the authority issue was the sole ground for the order denying the petition to compel arbitration, we will reverse the order. Because the court did not rule on Janet's additional arguments for not compelling arbitration (i.e., that the NAF cannot administer arbitrations and the Arbitration Agreement is unconscionable), we will remand the matter for consideration of those arguments.

## III. DISPOSITION

The order is reversed. The matter is remanded for further proceedings consistent with this opinion.

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Acting P. J.

_____

BURNS, J.

*Gordon v. Atria Management Co.* / A161379

15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JANET GORDON,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ATRIA MANAGEMENT<br>COMPANY, LLC, ET AL.,<br><br>      Defendants and Appellants. | A161379<br><br>(Contra Costa County<br>Super. Ct. No. MSC2001023)<br><br>**ORDER CERTIFYING<br>OPINION FOR<br>PUBLICATION** |

BY THE COURT:

The opinion in the above-entitled matter, filed on October 1, 2021, was not certified for publication in the Official Reports. For good cause, the request for publication, filed on October 21, 2021, is granted.

Pursuant to California Rules of Court, rules 8.1105 and 8.1120, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

Dated: _____10/27/2021_____      _____SIMONS, J._____, Acting P.J.

Superior Court of Contra Costa County, Hon. Steven K. Austin.

1

Lewis Brisbois Bisgaard & Smith LLP, Lann G. McIntyre, Tracy D. Forbath, Reuben B. Jacobson, and Paul R. Baleria, for Defendants and Appellants.

York Law Corporation, Wendy C. York and Daniel P. Jay, for Plaintiff and Respondent.