Filed 11/29/23  Tarin v. KND Development 55 CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARILYN TARIN et al., | |
| Plaintiffs and Respondents, | E079065 |
| v. | (Super.Ct.No. CIVSB2119681) |
| KND DEVELOPMENT 55, LLC, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider Jr., Judge.  Affirmed.

Giovanniello Law Group, Alexander F. Giovanniello, and Jennica M. Janssen for Defendant and Appellant.

Law Office of Nicholas Heiman and Nicholas Heiman for Plaintiffs and Respondents.

Four siblings sued the hospital where their mother died, asserting claims as her successors in interest and as individuals.  The trial court denied the hospital's petition to

1

compel arbitration based on an agreement signed by one of the children, whom the decedent had designated as her agent for healthcare decisions. We affirm that ruling.

## I. FACTS

According to the complaint, in December 2020, after almost a month of treatment at another hospital, 83-year-old Luesther Hubbard was transferred to Kindred Hospital Rancho, which is the trade name of defendant and appellant KND Development 55, LLC (Kindred). She had been "placed on a ventilator for respiratory assistance" at her previous hospital. At Kindred's facility, she was "provided a tracheostomy with the expectation she would be weaned from the ventilator and discharged home under hospice care." On the afternoon of January 12, 2021, during a video conference with some of her adult children, she had a medical emergency; after several minutes of "coughing, choking, and struggling to breathe" she became "silent and unresponsive." Efforts to revive her were unsuccessful, and she was pronounced dead shortly before 1 a.m. the next morning.

Luesther Hubbard's adult children—plaintiffs and respondents Marilyn Tarin, Dianne Yancy, Ernest Hubbard, and Vincent Hubbard—sued Kindred in July 2021. Their complaint alleges five causes of action: (1) elder abuse and neglect; (2) medical malpractice; (3) violation of patient rights; (4) negligent infliction of emotional distress; and (5) wrongful death. The first three are survivor claims, asserted by plaintiffs as their mother's successors in interest. The fourth cause of action encompasses individual

2

claims by Tarin and Yancy, who witnessed their mother's fatal medical emergency during the video call.  The fifth cause of action is asserted by all plaintiffs as individuals.

In March 2022, Kindred moved to compel arbitration.  By a "Power of Attorney for Health Care" (power of attorney) executed in October 2020, Luesther Hubbard had designated Tarin "to make all health-care decisions" for her, if needed.  The power of attorney does not expressly address arbitration agreements or resolution of legal claims.  Nevertheless, among the documents Tarin signed on her mother's behalf in December 2020, a few days after her transfer to Kindred's hospital, was a "Voluntary Alternative Dispute Resolution (ADR) Agreement" (ADR agreement).  The ADR agreement, in addition to the word "Voluntary" in its title, also specifies immediately below its title that "*[s]igning this agreement is not a precondition to the furnishing of services . . . .*"

The ADR agreement includes the provisions required by statute for "[a]ny contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider."  (Code Civ. Proc.,[1] § 1295, subd. (a).)  So, the first article specifies any dispute over unnecessary, unauthorized, or negligently or incompetently rendered medical services will be submitted to arbitration, rather than brought as a lawsuit in court proceedings.  And the last article before the signature line provides notice of the election of arbitration and waiver of the right to a jury or court trial.  (§ 1295, subds. (a) & (b).)  The ADR Agreement specifies the election of arbitration also "covers any claim or action brought by a party other than you (e.g. an

[1]  Undesignated statutory references are to the Code of Civil Procedure.

3

action by your spouse, legal representative, agent, heir) arising out of or relating to your hospitalization [. . .] against the hospital or its employees."

The trial court denied Kindred's petition. The court found Tarin's authority to make healthcare decisions did not include the power to enter into an arbitration agreement for her mother. It further found that, assuming she had that power, signing the ADR agreement as her mother's agent did not bind her or her siblings as individuals.

## II. DISCUSSION

A. *Applicable Law*

"The Federal Arbitration Act (FAA) provides arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" (*Logan v. Country Oaks Partners, LLC* (2022) 82 Cal.App.5th 365 (*Logan*), review granted Nov. 16, 2022, S276545, quoting 9 U.S.C. § 2.) "'"[E]ven when the [FAA] applies, [however], interpretation of the arbitration agreement is governed by state law principles . . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements . . . . "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.'"'"" (*Logan*, at p. 370, quoting *Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177.)

"Public policy favors contractual arbitration as a means of resolving disputes." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1057.) Generally, "that policy '"'does not extend to those who are not parties to an arbitration agreement, and a party cannot be compelled to arbitrate a dispute that he has

4

not agreed to resolve by arbitration.'"'"'" (*Ibid.*)  "However, there are exceptions.  For example, a *patient* who signs an arbitration agreement at a health care facility can bind relatives who present claims arising from the patient's treatment."  (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587; see also, e.g. *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142 [agents can bind principals; spouses can bind each other; and parents can bind minor children]; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513 [listing additional exceptions].)

"[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).)  "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence."  (*Ibid.*)  In deciding the petition, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination."  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

If the court's order denying a motion to compel arbitration is based on a decision of fact, then we review for whether substantial evidence supports the order.  (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)  "[I]f the court's

5

denial rests solely on a decision of law, then a de novo standard of review is employed." (*Ibid.*) Here, it is undisputed that Tarin was appointed her mother's agent for healthcare decisions and that she signed the ADR agreement. The parties raise only legal questions arising from those facts, so our review is de novo.

B. *Analysis*

In Kindred's view, the trial court should have allowed the arbitrator to determine whether the claims are subject to arbitration under the ADR agreement, rather than the trial court itself making that determination. Kindred asserts that the arbitration agreement "contains a delegation clause . . . mandating that the ADR Agreement governs any disputes including 'interpretation, applicability, enforceability, or formation of this Agreement.'" For the quoted language, Kindred cites only a particular page of the ADR agreement. Citing *Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 242 (*Tiri*), Kindred argues such language is "enforceable" because it is "clear and unmistakable" and "not revocable under state contract defenses such as fraud, duress, or unconscionability."

There is a fatal flaw in Kindred's argument. The ADR Agreement does not include the language that Kindred purports to quote from a delegation clause. The ADR agreement lists "interpretation of this ADR Agreement" among other types of "claims" subject to alternative dispute resolution, but it makes no mention of disputes over the agreement's applicability, enforceability, or formation. In contrast, the arbitration agreement found enforceable in *Tiri* said "unambiguously that '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve

6

any dispute relating to the interpretation, *applicability, enforceability, or formation* of this Agreement.'" (*Tiri*, *supra*, 226 Cal.App.4th at p. 242 (italics added).) Kindred's opening brief acknowledges the "present dispute" is about "the enforceability of the ADR Agreement," not its interpretation. We conclude Kindred has not demonstrated a clear and unmistakable delegation clause applies because Kindred has relied on language not in the agreement. The trial court was correct to rule on the merits of the petition to compel arbitration. (See *Rosenthal*, *supra*, 14 Cal.4th at p. 413.)[2]

The parties' dispute about enforceability has several layers. Did Tarin's authority to make healthcare decisions for her mother include the authority to enter into an arbitration agreement on her behalf, enforceable against her and (since her death) her successors in interest? Is the arbitration agreement Tarin signed as her mother's agent binding on Tarin as an individual? And did Tarin have the power to enter an arbitration agreement enforceable as to the other plaintiffs' individual claims? We begin our discussion with the first of these questions, and the answer we reach means that we need not address the others.

California law is unsettled as to whether an agent's authority to make healthcare decisions on behalf of the principal includes the authority to execute an optional arbitration agreement. In *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253

---

[2] Respondents' brief points out that the ADR agreement contains no delegation clause. Kindred chose to ignore the matter in its reply brief. Having made a significant mistake in the opening brief, the better practice would have been to acknowledge that the language mistakenly quoted in the opening brief does not exist in the case.

(*Garrison*), the court stated broadly that an agent's power to make "health care decisions" includes the power to enter into agreements requiring arbitration of medical malpractice and other claims related to medical care.  (*Id.* at pp. 264, 267; see also *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 262 (*Hogan*) [following *Garrison*].)  *Garrison* did not decide whether individual wrongful death claims by the patient's children and grandchildren were also subject to arbitration, instead remanding to the trial court for further proceedings.  (*Garrison*, at p. 267.)

In *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, the court distinguished *Garrison* on its facts.  (See also *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474, fn. 3 [distinguishing *Garrison* and *Hogan*].)  The power of attorney in *Young* included "no terms authorizing the patient's agent to make any decisions other than 'health care decisions' for the patient," while in *Garrison* "the durable power of attorney included 'the power to sign "[a]ny necessary waiver or release from liability required by a hospital, or physician."'"  (*Young*, at p. 1129.)  *Young* suggested that *Garrison*'s definition of "health care decisions" may have been dicta, reasoning that "[s]o broad an interpretation of 'health care decisions' seems unnecessary to the result . . . ."  (*Id.* at p. 1129.)  *Young* also opined, without further analysis, that "to the extent that the [*Garrison*] court intended such a general application, we disagree with its conclusion."  (*Young*, at p. 1129.)

Recently, *Logan*, *supra*, 82 Cal.App.5th at p. 365, criticized *Garrison*'s reasoning in depth and squarely held that an agent's authority to make "health care decisions" does

not include authority to enter into optional arbitration agreements: "The decision to waive a jury trial and instead engage in binding arbitration . . . is not a health care decision. Rather it is a decision about how disputes over health care decisions will be resolved." (*Logan*, at p. 372.)  Emphasizing the plain language of the principal's grant of authority, as well as recent regulatory changes demonstrating "that, practically speaking, arbitration agreements are not executed as part of the health care decisionmaking process," *Logan* affirmed the trial court's decision to deny the defendant's petition to compel arbitration. (*Id.* at pp. 374-375.)

We find *Logan* persuasive and applicable to our facts.  Among other things, *Logan*'s reasoning is consistent with statutory provisions defining the terms "health care" and "health care decision" in the context of advanced directives for healthcare.  (See Probate Code, § 4617 [defining "health care decision" as "a decision made by a patient or the patient's agent . . . , regarding the patient's health care . . . ."; *id.*, § 4615 [defining "Health care" as "any care, treatment, service, or procedure to maintain, diagnose, or otherwise affect a patient's physical or mental health condition"].)  We also find its reasoning best comports with longstanding general rules of construction applicable to all powers of attorney, even if the issue does not concern arbitration.  (See *Cutler v. State Bar of California* (1969) 71 Cal.2d 241, 252 ["[A]n agency power must be strictly interpreted according to the written grant of power"]; *In re Marriage of Pashley* (1974) 40 Cal.App.3d 1079, 1083 [in construing a power of attorney courts must consider the "language of the document itself"].)  We therefore follow *Logan* pending further

9

instruction from our Supreme Court.  Under *Logan*, Tarin lacked authority to sign the ADR agreement on her mother's behalf, so the ADR agreement is invalid in its entirety, and the trial court was correct to deny Kindred's petition to compel arbitration.  To the extent *Garrison* and similar cases would require a different conclusion, they are unpersuasive, and we decline to follow them.

Kindred argues that, regardless of any state authority, the United States Supreme Court's decision in *Kindred Nursing Centers Ltd. Partnership v. Clark* (2017) 581 U.S. 246 (*Kindred Nursing*) means that it is not "permissible" for us to "treat the ADR Agreement differently than other admissions documents."  This argument is unpersuasive.  First, like the arbitration agreement in *Logan*, the ADR agreement here is *not* an "admissions" document.  Federal regulations now prohibit an agreement for binding arbitration from being required as a condition of admission or as a requirement to continue receiving care at a facility. (*Logan*, *supra*, 82 Cal.App.5th at  pp. 374-375.)  In keeping with those regulations, the ADR agreement specifies that it is "*not a precondition to the furnishing of services.*"

Second, *Kindred Nursing*'s holding came in a context inapplicable here.  In *Kindred Nursing*, the United States Supreme Court considered a Kentucky "clear statement" rule requiring that "'an agent's authority to waive his principal's constitutional right to access the courts and to trial by jury must be clearly expressed by the principal.'"  (*Kindred Nursing*, *supra*, 581 U.S. at p. 252.)  Under that rule, even an agent "possessing broad delegated powers" could not agree to arbitration on another's

behalf if that authority was not expressly granted. (*Ibid.*) The Supreme Court held such a rule violated the FAA because it "fails to put arbitration agreements on an equal plane with other contracts." (*Id.* at p. 247) Accordingly, the Court reversed the Kentucky Supreme Court, which had held the plaintiff's power of attorney was "sufficiently broad to cover executing an arbitration agreement," but invalid for lack of a clear enough statement under the Kentucky rule. (*Id.* at p. 256.)

Here, in contrast, Tarin was not delegated broad powers, but only the limited authority to make "health care decisions" on behalf of her mother. Cases like *Garrison*, *Young*, and *Logan* do not apply a special rule for arbitration agreements like Kentucky's clear statement rule. Rather, they decide whether the authority to agree to arbitration of disputes arising from the principal's medical care is implied in a limited delegation of authority to make health care decisions. *Kindred Nursing* does not address that question, so it offers us no direction in deciding whether to follow *Garrison*, which found such implied authority, or *Young* and *Logan*, which did not.

Kindred's arguments based on *Madden v. Kaiser Foundation Hospitals, Inc.* (1976) 17 Cal.3d 699 (*Madden*) are unpersuasive too. *Madden* involved "an arbitration provision in a medical services contract entered into between the Board of Administration of the State Employees Retirement System . . . and defendant Kaiser Foundation Health Plan." (*Id.* at p. 702.) *Madden*'s reasoning applies when two parties "possessing parity of bargaining strength" negotiate a group contract; it is "'proper and usual'" for the Board, as agent for state employees, to negotiate all provisions of that contract, including

11

an arbitration provision, to carry out its agency. (*Id.* at p. 703.) As explained in *Logan*, however, that holding does not apply in circumstances like ours, where one individual has been delegated the power to make health care decisions on behalf of another individual. In such circumstances, "[t]here is nothing . . . 'necessary or proper and usual' about signing an optional arbitration agreement 'for effecting the purpose of [the] agency'. . . . Rather, the 'health care decision' . . . has been expressly decoupled from the decision whether to enter into the optional arbitration agreement." (*Logan*, *supra*, 82 Cal.App.5th at p. 373.)

In short, we are not persuaded Tarin had the authority to enter into the ADR agreement on behalf of her mother. Rather, we conclude it is invalid as to all plaintiffs' claims, including those asserted as their mother's successors in interest and those they bring as individuals. Thus, Kindred's petition to compel arbitration was properly denied.

### III. DISPOSITION

We affirm the order denying Kindred's petition to compel arbitration. Plaintiffs are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

12